1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

LEONARD BROWN,

                    Plaintiff,

     v.

U.S. DEPARTMENT OF JUSTICE,

                Defendant.

_____/

Case No.  1:13-cv-01122-LJO-SKO

**FINDINGS AND RECOMMENDATIONS GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

(Docs. 19, 20)

**ORDER DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY AND MOTION TO COMPEL PRODUCTION OF A VAUGHN INDEX**

(Docs. 15, 18)

## I.  INTRODUCTION

       This is a Freedom of Information Act ("FOIA" or "Act") case brought by Plaintiff Leonard

Brown ("Plaintiff") against the Department of Justice ("DOJ")[1] for denying his requests for an

_____

[1]  Plaintiff names as a single defendant the U.S. Department of Justice ("DOJ"), Drug Enforcement Administration ("DEA").  The Freedom of Information Act ("FOIA") provides a limited waiver of the federal government's immunity for district courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  *See* 5 U.S.C. § 552(a)(4)(B).  An "agency" is defined as "any executed department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency."  5 U.S.C. § 552(f).  The DEA is a departmental component of the DOJ, and it is not an "agency" that can be sued under FOIA.  The DOJ, which is a cabinet-level Department within the Executive Branch and which is the entity that promulgated and enforces the regulations and procedures that govern its components' decisions, is the pertinent agency within the meaning of 5 U.S.C. § 552(f).  As such, the DOJ is the only proper defendant.  Plaintiff does not identify the DOJ and the DEA as separate defendants.  For these reasons, the Court construes Plaintiff's complaint as one naming a single defendant, the DOJ.

unredacted copy of records relating to a DEA Report of Investigation ("ROI").  (*See generally*, Doc. 2 (Complaint).)  In response to Plaintiff's request, the agency searched for responsive records and determined that the request fell within one or more exemptions under FOIA.  (*See* Docs. 19-2; 19-3; 19-4.)  The DOJ has moved for summary judgment in its favor, lodging with the Court the Declaration of Katherine L. Myrick, Chief of the Freedom of Information/Privacy Act Unit, Freedom of Information/Records Management Section, within the DEA (Doc. 19-1 ("Myrick Decl."), and the *in camera*, *ex parte* submission of a 2004 DEA ROI dated January 13, 2004 ("the 2004 DEA ROI").[2]  Plaintiff has concurrently filed a cross-motion for summary judgment.[3]  (*See* Doc. 20.)

The motions were submitted upon the record without oral argument pursuant to Local Rule 230(g).  For the reasons set forth below, the Court RECOMMENDS that Defendant DOJ's motion for summary judgment be GRANTED and Plaintiff's motion for summary judgment be DENIED.

## II.   BACKGROUND

### A.    The Investigation Leading to Plaintiff's Incarceration

Plaintiff is a federal inmate serving two 212-month concurrent sentences for conspiracy to manufacture PCP, to abet its manufacture, and to possess PCP with intent to distribute it.[4] (Doc. 19-2, Exhs. 2, 3.)  As part of the investigation that led to Plaintiff's indictment and ultimate incarceration, a TT7 wiretap was placed on his mobile phone to determine whether Plaintiff was the unknown individual "LEN LNU" suspected of involvement in a PCP precursor chemical distribution organization and a PCP and piperidine manufacturing organization the DEA was

---

[2]   To date, only a redacted copy of this ROI has been filed on the Court's publicly-accessible electronic docket.  (*See* Docs. Compl., Exh. A; 19-1, Exh. C.)

[3]   Though titled and filed as a "Cross-Motion for Summary Judgment," Plaintiff's motion is presented and argued as a line-by-line opposition to the DOJ's Motion for Summary Judgment.

[4]   The Court notes that both parties exhaustively described the facts of the underlying investigation that ultimately led to the wiretapping of Plaintiff's mobile phone, and ultimately his indictment and conviction.  (*See* Docs. 2, 6-8; 19-4, 14-23; 20, 9-12.)  The Court is omitting an extensive discussion of the facts revolving around Plaintiff's underlying conviction, as those facts *are not* relevant to the FOIA analysis.  The parties have conflated facts relevant to Plaintiff's attempt to challenge the legality and propriety of the investigation leading to his indictment and conviction, with facts relevant to the FOIA issue before the Court.  Plaintiff may not seek any sort of habeas review of the legality or duration of his underlying conviction in this Court under the FOIA.  28 U.S.C. § 2254(a); *Badea v.Cox*, 931 F.2d 573, 574 (9th Cir. 1991) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973)); *accord Beardslee v. Woodford*, 395 F.3d 1064, 1068-69 (9th Cir. 2005) (per curiam).

investigating.  (*See* Doc. 20, pp. 18-57.)   Among the numerous individuals named during the course of the investigation and during Plaintiff's and his co-conspirators' trials, was Plaintiff's friend Hilliard Hughes.  Hilliard Hughes proffered a statement to the agency (the "2004 DEA ROI") on January 13, 2004, at approximately 11:30 a.m., regarding the events of January 24, 2003.  (*See* Myrick Decl., Exh. C.)  In the unredacted version of the 2004 DEA ROI, Hughes is asked questions regarding why he was present at a certain location on a certain date, whether he knows several individuals, and the methods of his production of PCP, among other questions.  (Myrick Decl., Exh. C.)  Most of his answers have been redacted.  (Myrick Decl., Exh. C.)

Plaintiff alleges the reason that Hilliard Hughes' answers in the 2004 DEA ROI were redacted is because Hughes was a DEA informant at the time the report was written.  (*See, e.g.*, Docs. 15, pp. 2-4; 20, pp. 7-11.)  Plaintiff alleges the DEA "fraudulently concealed" the fact that Hilliard Hughes was an informant for the DEA during the 2002-2003 investigation of Plaintiff, ultimately resulting in an "illegal wiretap" that led to Plaintiff's conviction and incarceration.  (Compl., pp. 6-7.)  Plaintiff alleges that an unredacted copy of Hilliard Hughes' proffer will prove that Hughes was an informant, and prove that the wiretap on his mobile phone that ultimately led to his conviction and incarceration was "fraudulently" and "illegally" obtained.  (*See* Compl., pp. 6-7; Doc. 20, pp. 7-11.)

**B.      The FOIA Request and Denial**

On December 27, 2012, Plaintiff requested "an unredacted copy [of] the Jan. 13, 2004, DEA-6 report prepared by SA Bradley Clemmer regarding the proffer of government witness Hilliard Hughes file no. R1-02-0104/file title: Aikens, Gerald[.]  [T]his report contains pages 1 of 5."  (Myrick Decl., Exh. A; *see also* Compl., 3.)  Plaintiff acknowledged that the requested report might contain "sensitive" material and therefore be withheld, and asked that such material be redacted and a copy sent to him.  (Myrick Decl., Exh. A.)  Plaintiff's request did not contend there was any public interest in disclosure of an unredacted copy.  (Myrick Decl., Exh. A.)

Any criminal investigative report responsive to Plaintiff's FOIA request would only be contained in a DEA investigative case file, maintained in the centralized DEA Investigative Reporting and Filing System ("IRFS") and indexed by individual information like name, Social

1   Security number, and date of birth in the DEA Narcotics and Dangerous Drugs Information

2   System ("NADDIS").  (Myrick Decl., ¶¶ 13-19, 28-49.)   Therefore, in response to Plaintiff's

3   request, a FOIA specialist performed a NADDIS query in July of 2012, and located the responsive

4   report 2004 DEA ROI, DEA Investigative File No. R1-02-014.  (Myrick Decl., ¶ 30.)

5           On January 28, 2013, Plaintiff received a letter from the DEA FOIA Records Management

6   Section informing him of the DEA's denial of his FOIA request, Request No. 12-00260-F.

7   (Myrick Decl., Exh. B; *see also* Compl., 3.)  The denial erroneously confused Plaintiff's request

8   for the 2004 DEA ROI with an earlier request for a report dated January 13, 2003.  (Myrick Decl.,

9   ¶ 10.)  On February 14, 2013, Plaintiff filed an appeal with the Office of Information Policy,

10  mentioning FOIA Exemption 7D and Ninth Circuit case law.  (Myrick Decl., Exh. C.)  Plaintiff's

11  written appeal did not argue that there was any public interest in disclosure of an unredacted copy

12  of the 2004 DEA ROI.  (Myrick Decl., Exh. C.)

13          On March 5, 2013, Plaintiff received a letter from the Office of Information Policy

14  informing him of an appeal number.  (Myrick Decl., Exh. D.)  On June 26, 2013, Plaintiff received

15  a letter from the Office of Information Policy affirming the DEA's denial of Plaintiff's FOIA

16  request on "modified grounds," pursuant to FOIA Exemption 7(C).  (Myrick Decl., Exh. E; *see*

17  *also* Compl., p. 3.)   The affirmance noted that "without consent, proof of death, official

18  acknowledgement of an investigation, or an overriding public interest, disclosure of law

19  enforcement records concerning an individual could reasonably be expected to constitute an

20  unwarranted invasion of personal privacy" and determined that any responsive records were

21  categorically exempt from disclosure under FOIA Exemption 7(C).  (Myrick Decl., Exh. E.)

22          In January 2014, the DEA Investigative File No. R1-02-0104 was searched for any report

23  mentioning Plaintiff and dated January 13, 2004.  (Myrick Decl., ¶ 31.)  As a result of the search,

24  2004 DEA ROI was located, and determined to contain information related to Plaintiff that had

25  been provided by a confidential source.  (Myrick Decl., ¶ 33; Exh. E.)  The 2004 DEA ROI was

26  therefore withheld in its entirety under FOIA Exemptions 7(C), (D), (E), and (F).  (*Id.*)

27  //

28  //

1    **C.      Procedural Background**

2          On August 6 and 25, 2014, Plaintiff filed motions to compel discovery and to compel

3    production of a Vaughn Index.  (Docs. 15; 18.)  Because the motions to compel relate to the

4    substantive issues in the case regarding disclosure of documents under the FOIA, Defendant

5    sought an extension of time to respond to the motions to compel in the form of a summary

6    judgment motion.  (Doc. 17.)  The DOJ filed oppositions to the motions to compel and filed a

7    motion for summary judgment on September 8, 2014.  (*See* Doc. 19.)  Plaintiff then filed a cross-

8    motion for summary judgment on September 26, 2014.  (Doc. 20.)  As the motions to compel

9    discovery and to produce a Vaughn Index are directly related to the substantive issue of

10   production of documents under the FOIA, they were continued and consolidated with the parties'

11   pending motions for summary judgment.  (Doc. 26.)

12                            **III.    LEGAL STANDARD**

13   **A.      Summary Judgment under the FOIA**

14         The Freedom of Information Act ("FOIA") gives individuals a judicially-enforceable right

15   of access to government agency documents.  5 U.S.C. § 552.6;[5] *see also Minier v. CIA*, 88 F.3d

16   796, 800 (9th Cir. 1996).  The statute "mandates a policy of broad disclosure of government

17   documents." *Church of Scientology v. Dep't of the Army*, 611 F.2d 738, 741 (9th Cir. 1979); *see*

18   *also John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (noting FOIA was animated

19   by a "philosophy of full agency disclosure"); *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361

20   (1976) ("disclosure, not secrecy, is the dominant objective of the Act").

21         To prevent disclosure of a limited class of sensitive government documents, FOIA lists

22   nine statutory exemptions.  5 U.S.C. § 552(b)(1)-(9)[6]; *see Maricopa Audubon Soc'y v. United*

---

23   [5]   FOIA provides, inter alia, that:

24         [E]ach agency, upon any request for records which (i) reasonably describes such records and (ii) is
         made in accordance with published rules stating the time, place, fees (if any), and procedures to be

25         followed, shall make the records promptly available to any person.

26   5 U.S.C. § 552(a)(3)(A).

27   [6]   The FOIA exempts from disclosure: information that is classified to protect national security; information that is
     related solely to the internal personnel rules and practices of an agency; information that is prohibited from disclosure
     under another federal law; information that concerns business trade secrets or other confidential commercial or

28   financial information; information that concerns communications within or between agency which are protected by
     legal privileges; information that, if disclosed, would invade another individual's personal privacy; information

*States Forest Serv.*, 108 F.3d 1082, 1085 (9th Cir. 1997) (agencies may withhold a requested document "only if the material at issue falls within one of the nine statutory exemptions found in [5 U.S.C.] § 552(b)").  Unlike the disclosure provisions of FOIA, its statutory exemptions "must be narrowly construed."  *John Doe Agency*, 493 U.S. at 152.  Where the government withholds documents pursuant to one of the enumerated exemptions of FOIA, "the burden is on the agency to sustain its action."  5 U.S.C. § 552(a)(4)(B).

"Summary judgment is the procedural vehicle by which nearly all FOIA cases are resolved."  *South Yuba River Citizens League v. National Marine Fisheries Service,* No. CIV. S-06-2845-LKK/JFM, 2008 WL 2523819 at *4 (E.D. Cal. June 20, 2008) (citing *Mace v. EEOC*, 37 F.Supp.2d 1144, 1146 (E.D. Miss. 1999)).  "Courts are permitted to rule on summary judgment in FOIA cases solely on the basis of government affidavits."  *Lion Raisins, Inc. v. United States Dep't of Agric.*, 354 F.3d 1072, 1082 (9th Cir. 2004).[7]

Where a citizen has made a request for information under FOIA, and the agency has refused in whole or in part to produce responsive materials, the Act authorizes the citizen to bring suit in federal court challenging the agency's refusal to disclose documents to the requester.  5 U.S.C. § 552(a)(4)(B).  These lawsuits typically present a dispute over the agency's claim that the withheld documents fall within one of the statutorily authorized exemptions.  These exemptions are "explicitly exclusive, and must be narrowly construed in light of FOIA's dominant objective of disclosure, not secrecy."  *Maricopa*, 108 F.3d at 1085 (internal citations and quotation marks omitted).

The peculiar nature of a FOIA dispute poses unique problems. As the Ninth Circuit has observed:

//

compiled for law enforcement purposes; information that concerns the supervision of financial institutions; and geological information on wells.  5 U.S.C. § 552(b)(1)-(9).

[7]   The well-known standard for summary judgment, is not applied to a FOIA proceeding.  "Unlike the typical summary judgment analysis, in a FOIA case, we do not ask whether there is a genuine issue of material fact, because the facts are rarely in dispute."  *Minier*, 88 F.3d at 800; *see also Fiduccia v. United States DOJ*, 185 F.3d 1035, 1040 (9th Cir. 1999) ("Though this is review of a summary judgment, our review in a FOIA summary judgment case is not simply de novo, nor do we ask whether there is a genuine issue of fact in most cases. Instead, in a FOIA case, we first determine whether the district judge had an adequate factual basis for decision, and if not, remand.")

6

1
2
3
4
5

> In a typical FOIA case, the plaintiff must argue that a government agency has improperly withheld requested documents, even though only the agency knows their actual content. This lack of knowledge by the party seeking disclosure seriously distorts the traditional adversarial process. To address this problem, courts have created methods to be sure the requesting party and the deciding judge have sufficient information upon which to determine whether the government agency properly withheld the requested documents. These methods include creation of a "Vaughn index" . . . and the submission of some other form of accounting for the withheld documents, such as an affidavit.

6
7

*Schiffer v. Fed. Bureau of Investigation*, 78 F.3d 1405, 1408-09 (9th Cir. 1996) (internal citations, quotation marks and brackets omitted).

8
9
10
11
12
13
14
15
16
17
18

The burden is on the agency to show that withheld materials are exempt from disclosure. 5 U.S.C. § 552(a)(4)(B); *see also Minier*, 88 F.3d at 800.  In addition, the governmental agency has the burden of proving that it has "conducted a search reasonably calculated to uncover all relevant documents."  *Weisberg v. United States Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983); *see also Zemansky v. United States EPA*, 767 F.2d 569, 571 (9th Cir. 1985).  In order to prevail on summary judgment, the agency must prove "it has fully discharged [these burdens] under FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester."  *Miller v. United States Dep't of State*, 779 F.2d 1378, 1382 (8th Cir. 1985) (citing *Weisberg*, 705 F.2d at 1350); *see also Zemansky*, 767 F.2d at 571.  "Courts are permitted to rule on summary judgment in FOIA cases solely on the basis of government affidavits."  *Lion Raisins*, 354 F.3d at 1082.

19

**B.**    ***In Camera* Inspection of Documents**

20
21
22
23

Ordinarily, "in camera inspection of documents is disfavored . . . where the government sustains its burden of proof by way of its testimony or affidavits."  *Lion Raisins*, 354 F.3d at 1079; *see* 5 U.S.C. § 552(a)(4)(B).[8]  Nevertheless, the Ninth Circuit has recognized that in certain cases,

24
25
26
27
28

---

[8]    The scope of judicial review of FOIA determinations is as follows:

> On complaint, the district court of the United States in the district in which the complainant resides . . . has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.  In such a case the court shall determine the matter de novo, and may examine the contents of such agency records *in camera* to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action.  In addition to any other matters to which a court accords substantial weight, a court shall accord substantial weight to an affidavit of an agency concerning the agency's determination as to

1  "the government's public description of a document and the reasons for exemption may reveal the

2  very information that the government claims is exempt from disclosure."  *Doyle v. F.B.I.*, 722

3  F.2d 554, 556 (9th Cir. 1983).  In such cases, the district court need not "require the government to

4  specify its objections in such detail as to compromise the secrecy of the information."  *Id.*

## IV.   DISCUSSION

6          Plaintiff's complaint alleges that the 2004 DEA ROI is not subject to Exemption 7(C)

7  because disclosure would reveal only "gen[e]ric information" about Hilliard Hughes' relationships

8  with two individuals and the reason Hilliard Hughes was "in Moreno Valley . . . when the PMB

9  was seized from him." (Compl., p. 3.)  According to Plaintiff, this "generic information"

> . . . can be disclosed without invading the privacy interests of Hughes [or] any
> other persons, based on the fact that the redacted answers to the questions in para.
> 2, 3, and 8 do not require Hughes to provide any personal information related to
> any person[']s address, date of birth, height, weight, eye color, or social security
> number[.]
>
> [Further,] the DEA has failed to demonstrate how the disclosure of the requested
> documents could reasonably be expected to constitute an invasion of any
> particular individual[']s privacy, based on the fact that the DEA has failed to
> provide a Vaughn index in order to adequately describe each redaction, state the
> exemption claimed for each redaction, and explain why the redaction is relevant.

(Compl., pp. 3-4.)

          Defendant argues the withholding of the 2004 DEA ROI record was proper under multiple

FOIA exemptions, including Exemption 7(C).  (Doc. 19-4.)  While Plaintiff argues that disclosure

is proper because the 2004 DEA ROI contains no "personal information related to any person[']s

address, date of birth, height, weight, eye color, or social security number[,]" the DOJ argues the

2004 DEA ROI

> . . . would contain information identifying other individuals involved with or
> associated with Hilliard Hughes.  These individuals would be protected from the
> disclosure of their identities and information about them.   These individuals
> would include law enforcement personnel, suspects, co-defendants, witnesses,
> potential witnesses, and other third parties.

//

---

technical feasibility under paragraph (2)(C) and subsection (b) and reproducibility under
paragraph (3)(B).

1
2
> Special agents and other law enforcement officers assigned to investigate criminal activities of [P]laintiff and other individuals could become targets of harassing inquiries for unauthorized access of investigative information.

3 (Doc. 19-3, pp. 4-5.)

4       Plaintiff further argues that disclosure of the unredacted 2004 DEA ROI is in the

5 overriding public interest because the DEA "fraudulently concealed" the fact that Hilliard Hughes

6 was an informant for the DEA during the 2002-2003 investigation of Plaintiff, ultimately resulting

7 in an "illegal wiretap" that led to Plaintiff's conviction and incarceration.  (Compl., p. 6.)  As a

8 consequence of "Prosecutorial misconduct," the DEA "fraudulently" manufactured the need for an

9 "illegal" wiretap, "which was supported by an affidavit that contained intentional and reckless

10 material omissions and misstatements related to the questioning of Hilliard Hughes and the DEA's

11 claim that . . . the TT7 wiretap was necessary[.]" (Compl., p. 7.)  Though Plaintiff argues a public

12 interest in the disclosure of the unredacted 2004 DEA ROI, Plaintiff primarily seeks disclosure to

13 vindicate his "gut feeling" that Hilliard Hughes was a DEA informant at the time the report was

14 written.  (*See, e.g.*, Docs. 15, pp. 2-4; 20, pp. 7-11, ¶¶ 13-30.)

15       The DOJ argues that Plaintiff has failed to identify any public interest in the disclosure of

16 the unredacted 2004 DEA ROI, because the heart of his request is not to serve the public interest

17 in combatting prosecutorial corruption.  Rather, Plaintiff seeks to "inflate his allegation that one

18 DEA agent lied in one wiretap application into a 'pattern' of agency wrongdoing[,]" and attempt

19 to create a "pattern of judicial deception" out of the "bare suspicion of misconduct."  (Doc. 23,

20 pp. 2-3.)  The DOJ points to Plaintiff's belief that his indictment was based on an "illegal TT7

21 wiretap" on his cellphone, which arose from Hilliard Hughes' statements as an alleged DEA

22 informant (Doc. 20, p. 5), arguing that Plaintiff's "gut feeling" is a "bare suspicion" and not

23 "evidence that would warrant a belief by a reasonable person that the alleged Government

24 impropriety might have occurred."  (Doc. 23, p. 3.)  The DOJ contends that "'[a]n assertion of that

25 sort, even in the form of a sworn affidavit, is too insubstantial' to be evidence of government

26 misconduct."  (Doc. 23, p. 3 (quoting *Oguaju v. United States*, 378 F.3d 1115, 1117 (D.C. Cir.

27 2004)).)

28 //

Plaintiff counters that the 2004 DEA ROI does not contain any protected personal identifying information exempt from disclosure, because two unredacted reports "from the same file record, file number, and file title" have been released previously. (Doc. 20, p. 76.) According to Plaintiff, the prior disclosure of two different reports from different dates, proves that an unredacted version of the 2004 DEA ROI can also be released without disclosing any personal identifying information. (Doc. 20, p. 76.) Plaintiff contends that the fact that "'only some of the information provided by Hilliard Hughes has been redacted,' strongly suggest[s] that the redactions are designed to protect some other facet of the communication, [and] not necessarily Hughes' privacy interest." (Doc. 20, p. 78.)

## A.    The DOJ Has Met Its Burden on Summary Judgment Regarding Plaintiff's FOIA Request, Request No. 13-00159-F

Having reviewed the DOJ's affidavits and the unredacted 2004 DEA ROI, the Court concludes that the DOJ has met its burden on summary judgment regarding Request No. 13-00159-F. "There is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a), because the withheld documents meet the criteria outlined in FOIA Exemption 7C. Disclosure of the withheld information would "reasonably be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552(b)(7)(C), by disclosing names and other identifying information which would reveal the identity of and disclose personal information about those individual(s) who allegedly provided information to the DEA, as well as any individuals involved with or associated with Hilliard Hughes, such as law enforcement personnel, suspects, co-defendants, witnesses, potential witnesses, and other third parties. As set forth below, the DOJ conducted a reasonable search, complied with all procedural requirements, and properly claimed an exemption under 5 U.S.C. §(b)(7)(C).

### 1.    The DOJ Properly Conducted a Reasonable Search for the Requested Record

Plaintiff's FOIA request on December 27, 2012, sought "the Jan. 13, 2004, DEA-6 report prepared by SA Bradley Clemmer regarding the proffer of government witness Hilliard Hughes file NO. R1-02-0104/file title: Aikens, Gerald this report contains pages 1 of 5." (Myrick Decl.,

Exh. A.)  Because any document responsive to Plaintiff's request "would be contained in a DEA investigative case file maintained in the DEA Investigative Reporting and Filing System (IRFS)" (Myrick Decl., ¶ 13), and "[n]o other record system is likely to contain the requested record (Myrick Decl., ¶ 14), the agency performed a NADDIS query of the IRFS using Plaintiff's name, date of birth, and social security number on July 24, 2012, and located DEA Investigative File No. R1-02-0104 (Myrick Decl., ¶ 30.)

The agency searched for "any report that mentioned plaintiff [and was] prepared on January 13, 2004," within DEA Investigative File No. R1-02-0104.  (Myrick Decl., ¶ 31.)  "No other record system is reasonably likely to contain the requested record." (Myrick Decl., ¶ 31.)  In its search for records responsive to Plaintiff's FOIA request, the agency was "not obliged to look beyond the four corners of the request for leads to the location of responsive documents." *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 390 (D.C. Cir. 1996).  Further, the agency did not need to search for any third-party names listed by Plaintiff in his FOIA request.  *See Blackwell v. F.B.I.*, 646 F.3d 37, 42 (D.C. Cir. 2011).  The agency's search for a responsive record was therefore sufficient in scope, and Plaintiff does not dispute this fact.  (*See* Doc. 20, pp. 74-76, ¶ 14-21.)

### 2.  The DOJ Properly Complied with the Procedural Requirements for a Denial of Disclosure Pursuant to FOIA Exemptions

In the DOJ's June 26, 2013, letter denying Plaintiff's appeal, the DOJ affirmed the DEA's initial denial on modified grounds.  (Myrick Decl., Exh. E.)  Sean R. O'Neill, Chief of the Administrative Appeals Staff, wrote that the agency would not disclose records responsive to Plaintiff's request, Request No. 13-00159-F, because such records were categorically exempt from disclosure under FOIA Exemption 7(C).  (Myrick Decl., Exh. E.)  The DOJ further specified that "[t]o the extent that responsive records exist, without consent, proof of death, official acknowledgement of an investigation, or an overriding public interest, disclosure of law enforcement records concerning an individual could reasonably be expected to constitute an unwarranted invasion of personal privacy."  (Myrick Decl., Exh. E.)  This additional information was intended to meet the DOJ's procedural obligations under the FOIA.  28 C.F.R. § 16.6(c); *see*

1    *also* 5 U.S.C. § 552(a)(6)(A)(i), (a)(6)(C)(i), (a)(6)(F).

2        The FOIA requires "every federal agency, upon request, to make 'promptly available to

3    any person' any 'records' so long as the request 'reasonably describes such records.'"

4    *Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003) (quoting

5    5 U.S.C. § 552(a)(3)(A)).   The Supreme Court recently summarized relevant agency procedures

6    under the FOIA as follows:

7        [The] FOIA requires each agency receiving a request to "notify the person making
         such request of [its] determination and the reasons therefor." 5 U.S.C. §
8        552(a)(6)(A)(i).   When an agency denies a request in whole or in part, it must
         additionally "set forth the names and titles or positions of each person responsible
9        for the denial," "make a reasonable effort to estimate the volume of any [denied]
         matter," and "provide any such estimate to the person making the request." §§
10       552(a)(6)(C)(i), (a)(6)(F).

11   *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, —— U.S. ——, 131 S.Ct. 1885, 1893 (2011)

12   (alterations in original); *see* 28 CFR §§ 16.1-16.12 (2013) (the regulation implementing the DOJ's

13   procedures under the FOIA).

14       Despite the FOIA's purpose of "facilitat[ing] public access to Government documents,"

15   *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991), the statutory scheme "contemplates that

16   some information may legitimately be kept from the public" *Lahr v. Nat'l Transp. Safety Board*,

17   569 F.3d 964, 973 (9th Cir. 2009).   The statute enumerates nine exemptions under which the

18   government may withhold documents or portions of document.  *See* 5 U.S.C. § 552(b)(1)-(9).  An

19   agency that invokes one of these exemptions bears the burden of demonstrating its propriety.  *Ray*,

20   502 U.S. at 173.  The FOIA exemptions are interpreted "narrowly" in the Ninth Circuit.  *Assembly*

21   *of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992).

22       Under 28 C.F.R. § 16.6(c), the "adverse determination denying a request" must be in

23   writing, must identify the name and title of the person making the denial, must briefly state the

24   reason for the denial and identify any applicable exemption under the FOIA, must state that the

25   denial is appealable and describe the appeal process, and must estimate the volume of records or

26   information withheld *unless* "providing an estimate would harm an interest protected by an

27   applicable exemption[.]"

28   //

Here, the June 26, 2013, denial letter was in writing, identified Mr. O'Neill and his title within the agency, identified the FOIA exemption under which records were being withheld and the reasons for withholding, and explained the appeal process. (Myrick Decl., Exh. E.) Although the June 26, 2013, denial letter did not disclose an estimated volume of records or information withheld, this failure is harmless. Not only would disclosure have arguably "harm[ed] an interest" protected under FOIA Exemption 7(C), by disclosing details about the number of individuals whose personal identifying information was being withheld, Plaintiff already explicitly knew the exact volume of records requested, as he had both provided a redacted copy of and referred to the redacted copy of the 2004 DEA ROI. (Myrick Decl., Exh. C; *see* Doc. 20, pp. 8-10, ¶¶ 18, 21, 27.) The volume of the records Plaintiff seeks has never been in question. (*Id.*)

**3.      The 2004 DEA ROI is Exempt from Disclosure under FOIA Exemption 7(C)**

The DOJ seeks to exempt the redacted portions of the 2004 DEA ROI by invoking FOIA Exemption 7(C), which exempts from disclosure:

> [R]ecords or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of privacy . . . .

5 U.S.C. § 552(b)(7)(C).

It is the burden of the administrative agency invoking FOIA Exemption 7(C) to establish that the requested information originated in an investigatory record is "compiled for law enforcement purposes[,]" *FBI v Abramson*, 456 U.S. 615, 622 (1982), and that the record falls under one or more exemption from disclosure, 5 U.S.C. § 552(a)(4)(B) (the burden is on the agency to show that withheld materials are exempt from disclosure). Once the agency meets that burden, the burden shifts to the requesting party to show that the public interest in disclosure outweighs the privacy rights of those connected with the investigation.

Here, it is uncontested that the 2004 DEA ROI in question originated in an investigatory record "compiled for law enforcement purposes." (Myrick Decl., ¶¶ 19-21; Doc. 20, pp. 75-76, ¶¶ 19-21.) It is also uncontested that the agency's search for records responsive to Plaintiff's request was sufficient in scope. (*See* Docs. 20, pp. 74-75, ¶¶ 10-17; 24; *see generally* Compl.)

1    The question before the Court, therefore, is two-part: whether the 2004 DEA ROI is exempted

2    from disclosure under the FOIA, and if it is, whether an overriding public interest outweighs any

3    privacy rights implicated by disclosure.

4         The DOJ argues that the 2004 DEA ROI "would contain information identifying other

5    individuals involved with or associated with Hilliard Hughes [including] law enforcement

6    personnel, suspects, co-defendants, witnesses, potential witnesses, and other third parties."

7    (Doc. 19-3, pp. 4-5.)   Plaintiff responds that the unredacted report already contains identifying

8    information for certain parties, so that disclosure of the redacted portions would not implicate any

9    privacy interest.   (Doc. 20, p. 78, ¶¶ 28-29.)   Plaintiff further argues that because no "personal

10   information related to any person[']s address, date of birth, height, weight, eye color, or social

11   security number" would be contained in the redacted portions of the 2004 DEA ROI, disclosure is

12   appropriate.   (Doc. 20, p. 77, ¶ 25; *see* Compl., 4.)

13        Plaintiff also argues that the unredacted 2004 DEA ROI contains identical identifying

14   information already disclosed in two different reports, an October 2002 DEA-6 report prepared by

15   Chris Yohn regarding the interview of CS Derrick Finney and a November 2004 DEA-6 report

16   prepared by SA Thomas Ceilecy.   (Doc. 20, p. 10, ¶¶ 22, 24; Exhs. E; F.)   Plaintiff contends that

17   these two different reports contain identifying information identical to the information contained

18   in the redacted portions of the 2004 DEA ROI he has requested, and were released without

19   redaction, thus confirming his contention "that the partial redactions in the [2004 DEA ROI] were

20   done to protect some other facet of the communication and not necessarily the privacy interest of

21   [Hilliard] Hughes." (Doc. 20, p. 10, ¶ 24.)   However, Plaintiff's belief that all redacted portions of

22   the 2004 DEA ROI are simply elaborations of the unredacted portions of the report and do not

23   contain critical, identifying, personal information, or are duplicative of unredacted portions of two

24   completely different reports, is not the legal standard for determining whether a strong privacy

25   interest exists in nondisclosure.

26        The standard for an "unwarranted invasion of privacy" under FOIA Exemption 7(C) is

27   broadly interpreted.   *U.S. Dept. of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S.

28   749, 756, 765-66 (1989) (recognizing a strong privacy interest in individualized information

14

collected by law enforcement agencies); *see Lesar v. United States Department of Justice*, 636 F.2d 472, 488 (D.C. Cir. 1980) (it "is difficult, if not impossible, to anticipate all respects in which disclosure might damage reputations or lead to personal embarrassment and discomfort"). It has long been recognized that disclosing information about an individual's involvement in law enforcement proceedings may constitute an unwarranted invasion of personal privacy for purposes of Exemption 7(C). *See Schrecker v. U.S. Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir. 2003) ("On the privacy side of the ledger, our decisions have consistently supported nondisclosure of names or other information identifying individuals appearing in law enforcement records, including investigators, suspects, witnesses, and informants."); *McDonnel v. United States*, 4 F.3d 1227, 1255 (3d Cir. 1993). [9] Here, regardless of what information Plaintiff believes is contained within the redacted portions of the 2004 DEA ROI, the fact remains that any individual whose identifying information is contained within those redacted portions has a reasonable interest in having his or her involvement in the investigation protected from disclosure:

> Although suspects have the most obvious privacy interest in not having their identities revealed, interviewees and witnesses also have a substantial privacy interest because disclosure may result in embarrassment and harassment. Law enforcement personnel involved in a criminal investigation have a similar privacy interest under Exemption 7(C) in not having their identities disclosed.

*Id.* (internal citations omitted); *see also Baez v. U.S. Dept. of Justice*, 647 F.2d 1328, 1338 (D.C. Cir. 1980). A strong privacy right exists in this case, and the 2004 DEA ROI falls under FOIA Exemption 7(C).

Further, insofar as Plaintiff argues that Hilliard Hughes specifically has no privacy interest in the disclosure of the 2004 DEA ROI because he was listed as a possible witness in Plaintiff's

---

[9] The 2004 DEA ROI is also protected from disclosure by Exemption 7(D). Under Exemption 7(D), any information that a law enforcement agency receives from a confidential source in the course of a criminal investigation is protected from disclosure. *Lesar*, 636 F.2d at 492 & n.114. Notably, this exemption "may be claimed regardless of the public interest in disclosure." *Jones v. Fed. Bureau of Investigation*, 41 F.3d 238, 247 (6th Cir.1994) (citing *Lesar*, 636 F.2d at 492).

Though Plaintiff argues that "Hughes knew very well that there was a reasonable probability that the information he provided would be made public at trial" (Doc. 24, p. 5), protection of a confidential source continues even after a source has been publicly identified, and the agency does not waive its right to assert this exemption when the confidential source testifies in open court, *Parker v. Dep't of Justice*, 934 F.2d 375, 379 (D.C. Cir. 1991). Further, while Plaintiff believes Hilliard Hughes is the only individual whose identifying information is contained within the redacted portions of the 2004 DEA ROI, Plaintiff's belief does not negate the necessity to protect *any* DEA informant's identifying information that is contained within the 2004 DEA ROI. Accordingly, the information sought by Plaintiff is also exempt from disclosure under Exemption 7(D).

criminal trial (Doc. 20, p. 80, ¶ 36), the fact that a witness has publicly testified at trial does not diminish or waive his privacy interest. *See Valdez v. U.S. Dep't of Justice*, 474 F. Supp. 2d 128, 133 (D.D.C. 2007).  Accordingly, Hilliard Hughes has a strong privacy interest in protecting from disclosure any records that may describe his cooperation with the DEA, whether or not he was ever actually an informant as Plaintiff alleges.  That interest is not waived simply because his name is mentioned elsewhere.

The DOJ has met its burden to show a strong privacy interest in nondisclosure.  The burden is therefore on the Plaintiff, as the party requesting disclosure, to show that there is some public interest in disclosure which outweighs the privacy rights of those individuals connected with the investigation.

### 4.     Plaintiff Has Not Shown Any Overriding Public Interest to Overcome Exemption 7(C)

The DOJ contends that Plaintiff has failed "to show any FOIA cognizable public interest that would outweigh the privacy interests of any third party."  (Myrick Decl., ¶ 48.) Plaintiff alleges that his request is in the public interest of revealing "Prosecutorial misconduct."  (Doc. 20, p. 79, ¶¶ 32-33.)  Plaintiff alleges the DEA "illegally" concealed Hilliard Hughes' "status as an informant" "to fraudulently establish necessity for [the] wiretap request" that ultimately led to Plaintiff's indictment and conviction, and has wrongfully withheld disclosure of the 2004 DEA ROI to cover-up its "perjury and fraud upon the court."  (Compl., p. 1; *see also* Doc. 20, p. 79, ¶¶ 32-33.)  Plaintiff contends that a review of the unredacted 2004 DEA ROI will confirm the DEA's illegal activity, and ultimately provide grounds to overturn his indictment and conviction. (*See* Compl.; Doc. 20, pp. 96-103 (devoting a considerable portion of Plaintiff's cross-motion for summary judgment arguing the disputed facts underlying his conviction); Doc. 24, pp. 2-4 (Plaintiff argues that "he has at a minimum produced evidence that would warrant a belief by a reasonable person" that the 2004 DEA ROI contains information proving Hilliard Hughes was a nondisclosed informant in his the underlying investigation which led to his indictment and conviction).)

//

16

Plaintiff argues that it is in the public interest to expose the "perjury and fraud" committed upon the Court in the course of the DEA's "concealment of Hilliard Hughes' status as a secret informant." (Doc. 24, p. 3 (arguing that the "alleged governmental wrongdoing . . . relat[ing] to the concealment of the DEA's successful use of Hilliard Hughes as a covert informant" is a "widespread issue that could affect the public at large due [to] the fact that a wiretap request is made by the government in a large number of drug cases all over this country and probable cause and necessity for these wiretap requests is commonly the subject of the suppression motions.").)

The FOIA was not designed to supplement the rules of civil discovery; access to agency documents is to be determined by the public's right to know, rather than by the needs of the individual as a litigant:

> Exemption 7(C) was designed to protect the "privacy of any person mentioned in . . . requested files and not only the person who was the object of the investigation." 120 Cong. Rec. S. 17033 (May 30, 1974). Where a privacy concern exists, disclosure is made only if the public's right to be informed is deemed to be of greater social importance. *Dept. of Air Force v. Rose*, 425 U.S. 352, 372-73 (1976). The private, personal, or pecuniary interest of a requester is not enough. Where the requester fails to assert a public interest purpose for disclosure, even a less then substantial invasion of another's privacy is unwarranted. *Ditlow v. Shultz*, 517 F.2d 166, 170-71 (D.C. Cir. 1975).

*King v United States Dep't of Justice*, 586 F. Supp. 286 (D.D.C. 1983).   The *only* public interest that is relevant for purposes of Exemption 7(C) is one that focuses on "the citizens' right to be informed about what their government is up to." *Reporters Comm.*, 489 U.S. at 773. The asserted public interest in disclosure must be "a significant one" and "more specific than having the information for its own sake." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004); *see also Lane v. Dep't of the Interior*, 523 F.3d 1128, 1137 (9th Cir. 2008).

Plaintiff's personal stake in obtaining documents in order to attack his conviction "does not count in the calculation of the public interest." *Oguaju v. United States*, 288 F.3d 448, 450 (D.C. Cir. 2002), *vacated and remanded on other grounds*, 541 U.S. 970 (2004), *reinstated*, 378 F.3d 1115 (D.C. Cir. 2004). Moreover, even if the records Plaintiff seeks would reveal wrongdoing in his case, "exposing a single, garden-variety act of misconduct would *not* serve the FOIA's purpose of showing 'what the Government is up to.'" *Id.* (italics added) (citing *Reporters Comm.*, 489 U.S. at 780 and *Beck v. Dep't of Justice*, 997 F.2d 1489, 1493 (D.C. Cir. 1993) ("The identity of

one or two individual relatively low-level government wrongdoers, released in isolation, does not

provide information about the agency's own conduct," and therefore "there is no public interest in

[the] release" of that information)).

The public interest is not served by "disclosure of information about private citizens that is

accumulated in various governmental files but that reveals little or nothing about an agency's own

conduct." *Reporters Comm.*, 489 U.S. at 773.  Where the public interest asserted is to show

government negligence or impropriety, the requester "must establish more than a bare suspicion in

order to obtain disclosure." *Favish*, 541 U.S. at 174.  Here, Plaintiff has failed to assert any *public*

interest in favor of disclosure.   "Where there is no asserted public interest, <u>even the slightest</u>

<u>privacy interest will prevent disclosure</u> under Exemption 7(C)." *Willis v. U.S. Dep't of Justice*,

581 F. Supp. 2d 57, 76 (D.D.C. 2008) (emphasis added); *see also Nat'l Ass'n of Retired Fed.*

*Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989) ("[S]omething . . . outweighs nothing

every time").

Because Hilliard Hughes' – *and any other individual involved with or associated with*

*Hilliard Hughes* – privacy interest, however slight, necessarily outweighs the nonexistent public

interest in release of the unredacted 2004 DEA ROI, Plaintiff's FOIA request is foreclosed by

FOIA Exemption 7(C).  The DOJ has proven it fully discharged its burdens under the FOIA, and

is entitled to summary judgment.  *See Zemansky*, 767 F.2d at 571.

**B.**   **Plaintiff's Motion to Compel Preparation of a Vaughn Index Must Be Denied Because a Vaughn Index Cannot Be Created Without Also Revealing the Information Contained in the Withheld Documents**

Plaintiff motioned the Court on August 25, 2014, to compel the DOJ to prepare a Vaughn

Index of the 2004 DEA ROI.  (Doc. 18; *see also* Docs. 20; 24.)  The Ninth Circuit has described

Vaughn indices as follows:

> Ordinarily, rules of discovery give each party access to the evidence upon which the court will rely in resolving the dispute between them.  In a FOIA case, however, because the issue is whether one party will disclose documents to the other, only the party opposing disclosure will have access to all the facts. [citations.]

> "This lack of knowledge by the party seeking disclosure seriously distorts the traditional adversary nature of our legal system[ ]."  [*Vaughn v. Rosen*, 484 F.2d 820, 824 (D.C. Cir. 1973)].  The party requesting disclosure must rely upon his

adversary's representations as to the material withheld, and the court is deprived of the benefit of informed advocacy to draw its attention to the weaknesses in the withholding agency's arguments.  It is simply "unreasonable to expect a trial judge to do as thorough a job of illumination and characterization as would a party interested in the case." *Id*. at 825.

In recognition of this problem, government agencies seeking to withhold documents requested under the FOIA have been required to supply the opposing party and the court with a "Vaughn index," identifying each document withheld, the statutory exemption claimed, and a particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption.  [Citations omitted.]  The purpose of the index is to "afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." [*King v. Dep't of Justice*, 830 F.2d 210, 218 (D.C. Cir. 1987).]  The index thus functions to restore the adversary process to some extent, and to permit more effective judicial review of the agency's decision.

*Wiener v. F.B.I.*, 943 F.2d 972, 977-78 (9th Cir. 1991); *see also Schiffer*, 78 F.3d at 1408-09.

When the DOJ denied Plaintiff's FOIA request on June 26, 2013, it did not furnish a Vaughn Index of the withheld document.  (*See* Myrick Decl., Exh. E.)  Further, the DOJ has not produced a Vaughn Index at any point since denying Plaintiff's FOIA request pursuant to FOIA Exemption 7(C).  The DOJ does not dispute that no Vaughn Index has been produced to Plaintiff.  Instead, the DOJ appears to argue that while it has not produced and will not produce a Vaughn Index, it has elsewhere in the pleadings substantively produced the information that would normally be contained in a Vaughn Index.  (Doc. 19-6, p. 2.)  The DOJ argues that the Myrick Declaration, submitted with the summary judgment motion papers, "includes the indexing content of a Vaughn index.  [It] goes through the found report of investigation page by page and section by section, stating the nature of the withheld content and naming bases for withholding." (Doc. 19-6, p. 2 (citing Myrick. Decl., ¶¶ 35-41).)  The DOJ argues that through the Myrick Declaration and the argument made in the DOJ's points and authorities, it has effectively fulfilled its obligation under *Wiener*.  (Doc. 19-6, p. 2.)

Despite the DOJ's argument that it has substantively complied with the requirements of *Wiener*, the reality is that not only did the DOJ deny Plaintiff's FOIA request, it also failed to furnish a Vaughn index with its denial.  Under *Wiener*, normally, the DOJ would be required to produce an actual Vaughn Index of the withheld documents, "identifying each document withheld,

1   the statutory exemption claimed, and [providing] a particularized explanation of how disclosure of

2   the particular document would damage the interest protected by the claimed exemption." *Wiener*,

3   943 F.2d at 977.  However, after considering the Myrick Declaration and conducting an *in camera*

4   review of the withheld documents, *Lion Raisins*, 354 F.3d at 1082-85, the Court cannot discern a

5   way to require the DOJ to provide "a particularized explanation of how disclosure of the particular

6   document would damage the interest protected by the claimed exemption," *Wiener*, 943 F.2d at

7   977, without also forcing the agency to *reveal* the protected information contained in the withheld

8   documents.  *See also Truthout v. Dep't of Justice*, 20 F. Supp. 3d 760, 768 (E.D. Cal. 2014).

9   As discussed above, this information falls within FOIA Exemption 7(C).  Production of a

10  detailed Vaughn Index cannot be compelled, because it will invariably reveal the personal

11  identifying information that the DOJ seeks to protect.[10]   In any event, the denial of Plaintiff's

12  motion to compel the DOJ to produce a Vaughn Index of the 2004 DEA ROI is ultimately

13  harmless, because the information Plaintiff seeks is contained within the Myrick Declaration.

14  Accordingly, Plaintiff's motion to compel the production of a Vaughn Index is DENIED.

15
**C.     Plaintiff's Motion to Compel Discovery Must Be Denied Because the Request**
16  **Impermissibly Exceeds the Limited Scope of Discovery under the FOIA**

17  Plaintiff motioned the Court on August 8, 2014, to compel the DOJ to fully respond to

18  Interrogatories Nos. 1, 4-11, 14-15, and 18-20.  (Doc. 15, p. 1; *see* Doc. 19-2, Exhs. 4, 6-7.)[11]

---

19  [10]   For example, investigative case files, or DEA ROIs, maintained in IRFS contain several records, including a DEA
20  report of investigation, a DEA Form 6, and a DEA Form 6a continuation page. (Myrick Decl., ¶ 34.)  The DEA Form
    6 and DEA Form 6a are multi-block forms that together make up the DEA ROI, and are used to memorialize
21  investigative and intelligence activities and information. (Myrick Decl., ¶ 34.)  DEA Form 6 consists of 15 numbered
    blocks, and DEA Form 6a consists of 6 numbered blocks, in which investigative and intelligence information is
    recorded. (Myrick Decl., ¶¶ 35-36.)  In the case of the 2004 DEA ROI, the DEA Form 6 and DEA Form 6a contained
22  "a G-DEP identifier" and "NADDIS identifiers," which were withheld from disclosure under FOIA Exemption 7(E).
    (Myrick Decl., ¶¶35-36.)

23      Further, DEA Form 6 and the Details section of the report narrative contained "the names and/or signatures of
24  DEA Special Agents," which were withheld pursuant to FOIA Exemptions 7(C) and 7(F). (Myrick Decl., ¶ 39.)  DEA
    Form 6 also contained "the names of, identifiers and information related to third-parties" and "third-party identifying
25  information such as NADDIS numbers," which were withheld pursuant to FOIA Exemptions 7(C) and (F). (Myrick
    Decl., ¶ 40.)  DEA Form 6 and DEA Form 61 also contained "information provided by and [capable of] identify[ing]
26  the confidential source that provided the information," which were withheld pursuant to FOIA Exemptions 9(D) and
    7(F). (Myrick Decl., ¶ 41.)

27  [11]   Plaintiff served his Interrogatories Nos. 1-20 under postmark on April 15, 2014, "addressed to one or more
    nonparty individuals, demanding various items of information apparently related to [P]laintiff's claim that he was
28  convicted unfairly, and his Request for Production No. 1, demanding 'the original unredacted January 13, 2004, DEA-
    6 report of investigation.'"  (Doc. 19-5, p. 1; *see* Doc. 19-2, Exh. 4.)  Plaintiff served his Interrogatories Nos. 21-29

1   Plaintiff argues that the DOJ "responded with insufficient boilerplate objections to the
2   interrogatories submitted in the FOIA discovery requests" in "an attempt to evade the disclosure
3   of discoverable information related to the DEA's concealment of government witness Hilliard
4   Hughes' status as a covert confidential informant, which was done in order to fraudulently
5   establish necessity for the [TT7] wiretap order" that led to Plaintiff's indictment and conviction.
6   (Doc. 15, p. 2.)

7         The FOIA creates an enforceable right "to enjoin [an] agency from withholding agency
8   records and to order the production of any agency records improperly withheld."   5 U.S.C.
9   § 552(a)(4)(B); *see Kissing v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 139
10  (1980).   An action under the FOIA is *not* a normal case, where a party can seek answers to
11  questions generally relevant to his case; in actions brought under the FOIA, "ordinary rules of
12  discovery cannot be followed" because the only issue before the Court "is whether one party is
13  entitled to non-disclosed documents." *Minier*, 88 F.3d at 803.

14        Here, Plaintiff is attempting to uncover answers to his various theories concerning the
15  investigation and prosecution that resulted in his conviction and incarceration.  (*See* Doc. 15, p. 2;
16  *see also* Doc. 19-2, Exhs. 4; 5.)  The "FOIA does not require agencies to provide explanations or
17  answers in response to questions disguised as FOIA requests . . . [the] FOIA creates a right of
18  access to records, not a right to personal services." *Rodriguez v. McLeod*, No. 1:08-cv-184-LJO-
19  GSA, 2008 WL 5330802, at *3 (E.D. Cal. Dec. 18, 2008) (quoting *Sands v. United States*, No. 94-
20  0537-CIV, 1995 WL 552308 (S.D. Fl. Jun. 19, 1995)).  "An agency's rationale for undertaking an
21  investigation of the Plaintiff is not the proper subject of FOIA discovery requests." *Williams v.*
22  *F.B.I.*, No. 90-2299, 1991 WL 163757, at *3 (D.D.C. Aug. 6, 1991).

23  //

24

25

---

26  under postmark on April 16, 2014.  (Doc. 19-6, p. 1; *see* Doc. 19-2, Exh. 5.)  On June 2, 2014, the DOJ served
    detailed objections, supported by citations to authority, responding to each of the 29 interrogatories and the production
27  request. (Doc. 19-5, p.2; *see* Doc. 19-2, Exh. 6.)  Plaintiff postmarked on June 9, 2014, his "Disputed Response to
    Defendant's Boilerplate Objections," where he withdrew 14 of the interrogatories and set forth his arguments
28  opposing the objections to 15 of the interrogatories.  He did not address his document production request. (Doc. 19-6,
    p. 2; *see* Doc. 19.2, Exh. 7.)

1    Plaintiff seeks information that goes to his underlying prosecution – to the propriety and

2   substance of the investigation, indictment, and conviction – in his discovery motion.  (*See, e.g.,*

3   Doc. 15, p. 3 ("[T]he information [Plaintiff] seeks through discovery would eliminate the need for

4   a summary judgment motion because the discovery would provide relevant factual information"

5   and "expose" "government witness Hilliard Hughes' cooperation as a covert confidential

6   informant for the DEA").)  The interrogatories are merely "questions disguised as FOIA requests";

7   granting Plaintiff's motion would impermissibly expand the limited scope of FOIA discovery.  *See*

8   *Flowers v. IRS*, 307 F. Supp. 2d 60, 72 (D.D.C. 2004) (denying discovery that the plaintiff

9   designed to "investigate the IRS' motives in selecting her for an audit"); *accord, e.g., Williams*,

10   1991 WL 163757, at *3 (concluding that the plaintiff was not entitled to discovery "to unearth

11   details about the [agency]'s investigation" because an agency's investigatory rationale is not the

12   proper subject of FOIA discovery requests").

13    Accordingly, Plaintiff's motion to compel discovery is DENIED.

14    **V.   CONCLUSION AND RECOMMENDATION**

15    Accordingly, IT IS HEREBY RECOMMENDED that Defendant's motion for summary

16   judgment be GRANTED, and Plaintiff's motion for summary judgment be DENIED, in full.  In

17   light of this recommendation and for the reasons stated above, IT IS FURTHER ORDERED that

18   Plaintiff's motions to compel discovery and the production of a Vaughn Index are DENIED.

19    These findings and recommendations are submitted to the district judge assigned to this

20   action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within twenty-

21   eight (28) days of service of this recommendation, any party may file written objections to these

22   findings and recommendations with the Court and serve a copy on all parties.  The document

23   should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The

24   district judge will review the magistrate judge's findings and recommendations pursuant to

25   28 U.S.C. § 636(b)(1)(C).  Plaintiff is advised that failure to file objections within the specified

26   //

27   //

28

1   time may waive the right to appeal the district judge's order.  *See, e.g., Martinez v. Ylst*, 951 F.2d

2   1153 (9th Cir. 1991).

3

4   IT IS SO ORDERED.

5      Dated:   **March 17, 2015**                    **/s/ Sheila K. Oberto**
                                              UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28